**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA,**

                            **Hon. Hugh B. Scott**

             v.

                            **09CR331A**

                            **Order**

**Cody Busch, et al,**
                     **Defendants.**

By Order dated December 14, 2012, the Court directed that certain discovery be produced, including the production of the ten-day reports and sealing orders relating to the eavesdrop warrants issued in this case. The government filed a motion for reconsideration (Docket No. 694). The government represents that the sealing orders had already been produced (Docket No. 695 at page 2)[1]. However, the government seeks reconsideration of the Court's direction that the 10-day or progress reports be similarly produced. (Docket No. 695 at pages 4-6). The defendants were directed to respond to the motion for reconsideration by December 24, 2012. (Docket No. 696). Defendant M. Deynes included a response to this motion as part of other filings on December 28, 2012. (Docket No. 707).

Rule 16 of the Federal Rules of Criminal Procedure authorizes discovery from the

---

[1] The government provided an additional copy of the sealing orders attached to the instant motion papers (Docket No. 695, Exhibit B).

1

government of documents material to the defense. Excluded from discovery are internal investigative documents "made by the attorney for the government or any other government agent investigating or prosecuting the case." Fed.R.Crim.P. 16(a)(2). Discovery is material if the information sought is relevant to the case and will lead to the discovery of admissible evidence. See United States v. Stevens, 985 F.2d 1175, 1180 (2d Cir.1993); United States v. Tanner, 279 F.Supp. 457, 469–70 (N.D.Ill.1967).

In United States v. Chimera, 201 F.R.D. 72 (W.D.N.Y. 2001), Judge Richard J. Arcara held that progress reports relating to eavesdrop warrants are not subject to disclosure:

> As noted, Fed.R.Crim.P. 16(a)(1)(C) authorizes discovery from the government of documents material to the defense. Excluded from discovery are internal investigative documents "made by the attorney for the government or any other government agent investigating or prosecuting the case." ... Discovery is material if the information sought is relevant to the case and will lead to the discovery of admissible evidence. ... Further, the requested information must have more than an abstract relationship to the issue presented; there must be some indication that the requested discovery will have a significant effect on the defense. ... Although Defendants agree the requested progress reports will assist them in establishing violations of § 2518(1), (4)(e), and (5), the court finds the information contained in such reports will not materially aid Defendants' quest to discover potential defects in the initial applications for the Title III orders, of the execution or extensions of the orders. Any lack of probable cause for the issuance of the orders or a failure to otherwise comply with § 2518(1)(c) must be present itself on the face of the application. See United States v. Wagner, 989 F.2d 69, 74 (2d Cir.1993) (assessing existence of probable cause for wiretaps on basis of informant's investigative activities as described in affidavit of support of Title III application and not results of subsequent suppression hearing); United States v. Orozco, 108 F.R.D. 313, 316 (S.D.Cal.1985) (validity of wire tap applications must "be based on the knowledge of the government agents as of the date the application was sought"). As Defendants have received these documents, the progress reports will be irrelevant, and thus immaterial, to the court's consideration

> of these issues. Any questions regarding the investigators's failure to comply with early termination requirements applicable under § 2518(3)(e), may be determined by comparison between the objectives as stated in the order and the actual taped interceptions, transcript summaries, and contemporaneous logs, all of which the Government provided or has agreed to provide to Defendants. The same is true as to any claims of failure to minimize in accordance with § 2518(5). Orozco, supra, at 316 (denying request for Title III progress reports stating "tapes, summaries, and logs ... are the original and best sources of information regarding statutory compliance"). ... Nor is there any basis to believe that the reports will yield exculpatory material required to be disclosed pursuant to Brady v. Maryland, .... First, Brady material is not a proper subject of pretrial discovery. Weatherford v. Bursey, 429 U.S. 545, 559 (1977). Second, as the court in Orozco, supra, observed, progress reports primarily constitute summaries of interceptions and therefore "do not provide any statements or exculpatory material not also required to be disclosed in its original form." Orozco, supra, at 316. Thus, if the intercepted communications contain exculpatory information, Defendants either already have, or will have, access to it in sufficient time to use it in their defense.

Chimera, 201 F.R.D. at 76-77.

This ruling has been generally followed in this District. See United States v. Cruz, 2012 WL 2255295 (W.D.N.Y. 2012)(Schroeder, M.J.); United States v. Santiago, 2012 WL 2259697(W.D.N.Y. 2012)(Schroeder, M.J.); United States v. Koschtschuk, 2010 WL 584018 (W.D.N.Y. 2010)(McCarthy, M.J).

The defendant argues, without citation to authority or factual basis, that he "believes that in this case the progress report contained more than simple summaries of interceptions" and that the reports were utilized by Chief Judge William M. Skretny in making his determination as to the issuance of further eavesdrop warrants." (Docket No. 707 at page 11). The record in this case reflects that there are only two eavesdrop warrants at issue: 09MR88 (originally issued on

3

October 9, 2009) and 09MR103 (originally issued on November 25, 2009). The defendant has not identified the "further eavesdrop warrants" purportedly issued based upon the progress reports relating to the two issued warrants in this case. Importantly, the defendant has not rebutted the fact that any probable cause determination relating to any "further" eavesdrop warrants must be based upon the information present within those respective applications. Thus, the defendants have not articulated a basis to depart from the reasoning set forth in Chimera. The government's motion for reconsideration is granted. To the extent that the Court's December 14, 2012 Order directed the government to produce the progress reports relating to the eavesdrop warrants in this case, the Order is vacated.

Hearing Schedule

During oral argument on December 5, 2012, several counsel represented that they would be filing affidavits of their clients relating to suppression issues. The Court directed that any such affidavit shall be filed by December 21, 2012 so that arrangements to conduct any necessary hearings can be made before February 5, 2013. (Docket No. 691). Such additional papers have been filed by defendants Ford (Docket No. 698), Colon (Docket No. 700), Busch (Docket No. 701), and David Deynes (Docket No. 706). Similarly, during oral argument defendant Smith stated an intention to file a motion a supplemental motion to suppress statements made during a proffer. He has done so. (Docket No. 705).

The updated record reflects that the following issues have been fully developed to require evidentiary hearings:

1. Delgado (Docket No. 512; Affidavit Docket No. 512-4).
    - the suppression of a statement made on April 30, 2006 [2]
    - the suppression of a statement made on February 6, 2012[3]

2. M. Deynes (Docket No. 546)(Affidavit Docket No. 684)
    - suppression of the search 28 California Street[4]

3. Rodriguez (Docket No. 549)(Affidavit Docket No. 665-1)
    - suppression of search of 185 Breckenridge Streeet on January 24, 2008:
    - suppression of search of 185 Breckenridge Streeet on February 20, 2008;
    - suppression of search of 185 Breckenridge Streeet on March 27, 2008;

---

[2] The government has consented to a hearing on this issue. (Docket No. 687 at page 113).

[3] The government has consented to a hearing on this issue (Docket No. 710 at page 5). The Court had previously set a hearing with respect to a purported line-up identification in November of 2006. The government represents that although Delgado was placed in a line up at some point in November 2006, no identification was made at that time. Thus, there is no identification to suppress. (Docket No. 710 at page 5, n.2). The defendant seeks disclosure of the identities of any witness or witnesses who failed to identify him. (Docket No. 512-4 at ¶ 11). To the extent that such information constitutes Brady or Jencks Act material, the government shall produce it pursuant to the Court's directions relating to the production of such information.

[4] The only substantive argument articulated by the defendant with respect to this search is that there was no probable cause to search the lower apartment at 28 California Street. Initially, the government argues that the defendant does not have standing to challenge the search of that premises because it was owned by his girlfriend. (Docket No. 710 at page 29). However, the defendant asserts that he had been living with his girlfriend at that location since 2007; that all of his clothing was there; and that he slept there "virtually every evening." (Docket No. 684-1 at ¶ 3). This is sufficient to establish standing to challenge the legality of the searches. See Minnesota v. Olson, 495 U.S. 91 (1990)(overnight guest with permission of the host has right to privacy); United States v. Fields, 113 F.3d 313, 320 (2d Cir.1997) ("[S]ociety recognizes as legitimate the expectation of privacy possessed by an overnight guest—even though he has at best a fleeting connection to his host's home."). The government also argues that no hearing is warranted on this issue because the determination of whether probable cause existed can be made based upon a review of the search warrant application. <u>The government is directed to submit an unredacted copy of the search warrant and application relating to this search to the Court for *in camera* review on or before January 18, 2013. So that a hearing could proceed during the time set for hearings in February, the parties shall presume that a hearing will be held pending the Court's review of the search warrant materials.</u>

5

                - suppression of search of 185 Breckenridge Streeet on April 22, 2008;[5]
                - suppression of October 1, 2009 stop & arrest
                - suppression of statements made on October 5, 2009; and
                - suppression of statements made on February 1, 2010.[6]

4.     O. Hernandez (Docket No. 550) (Affidavit Docket No. 550-2)
            - suppression of search of automobile on March 23, 2008

5.     Augus (Docket No. 551)(Affidavit 644-2)
            - suppression of identification on November 24, 2009
            - suppression of identification on November 12, 2009
            - suppression of identification on November 11, 2009
            - suppression of evidence (.38 rounds) discovered in apartment upon arrest

6.     Peebles (Docket No. 552)
            - suppression of identification procedures on October 28, 2009:
            - suppression of identification procedures on November 4, 2009; and
            - suppression of identification procedures on August 12, 2009

7.     Thurmond (Docket No. 553) (Affidavit Docket No. 553-2)
            - suppression of statement made on February 3, 2012

---

[5]  The government argues that Rodriguez lacks standing to challenge the search of 185 Breckenridge Street because the premises was a two-family dwelling owned by a third-party and Rodriguez gave other addresses as his residence to the police. (Docket No. 710 at pages 6-7, 28). While the government contends that Rodriguez does not state that he was an overnight guest at this house (Docket No. 710 at page 28); Rodriguez, in fact, does state that he was present at this home with his friends (Docket No. 665-1 at ¶ 5) and that he "was periodically spending the night" at that house. (Docket No. 665-1 at ¶6). The Court finds that the defendant's statement that he was an overnight guest at the house is sufficient to warrant a hearing as to the legality of the searches. See Minnesota v. Olson, 495 U.S. 91 (1990)(overnight guest with permission of the host has right to privacy); United States v. Fields, 113 F.3d 313, 320 (2d Cir.1997) ("[S]ociety recognizes as legitimate the expectation of privacy possessed by an overnight guest—even though he has at best a fleeting connection to his host's home."). If there is a material factual dispute as to whether Rodriguez was an overnight guest with the permission of a legitimate host, that issue too, will be addressed at the hearing.

[6]  The government consents to hearings with respect to statements made by defendant Rodriguez on October 5, 2009, February 1, 2010 and March 24, 2010. (Docket No. 584 at page 23).

8. Colon (Docket No. 557)(Affidavit Docket No. 659-1)(Affidavit Docket No. 700-1)[7]
- suppression of statement made on December 3, 2004
- suppression of statement made on July 22, 2007
- suppression of statement made on December 19, 2009
- the identification procedures used on January 24, 2010[8]

9. B. Medina (Docket No. 559)
- suppression of identification procedure used on October 28, 2009

10. I. Lopez (Docket No. 614)(Declaration Docket No. 681)
- suppression of statement made on July 27, 2011;
- suppression of statement made on October 5, 2011; and
- suppression of the search of a Ford Explorer.[9]

11. Moscoso - At oral argument, the government consented to hearings regarding "a number of photo arrays, identifications that relate to him." (Docket No. 687 at page 105). These issues do not appear to be raised or identified in the defendant's motions papers.

12. Ford (Docket No. 556)(affidavit 698)
- suppression of oral statements allegedly made on June 13, 2010
- suppression of a written statement made on June 13, 2010

---

[7] Defendant Colon represents that his prior papers included typographical errors and that the statements he referred to as having been purportedly made on July 2, 2007 (Docket No. 641 ¶6(a)) and July 7, 2007 (Docket Nos.659, p.2; Docket No. 659-1) were actually made on July 22, 2007. (Docket No. 700 at ¶ 1). Further, the alleged statement in indictment, to the effect that Colon threatened to shoot an officer with an AK 47 is the December 19, 2009 statement the defendant seeks to challenge.

[8] The government consents to a hearing on this issue. (Docket No. 687 at page 103).

[9] The government argues that hearings are not necessary with respect to defendant Lopez's statements because he only states that he "felt pressured" and does not allege force or threats. (Docket No. 710 at page 13). The statement that one was "pressured" could include force or threats. Under the circumstances of this case, the Court finds that a hearing as to the facts surrounding the defendant's statements is appropriate. Similarly, the government contends that the defendant signed a consent form allowing for the search of the Ford Explorer (which the defendant disputes); and that even if his consent was not valid, the vehicle belonged to Lopez's father, who would have had apparent authority to consent. (Docket No. 710 at page 14). It is not clear from the record whether Lopez's father did consent to the search of the vehicle. A hearing with respect to the search of the Ford Explorer is also warranted.

    - suppression of oral statements made upon arrest on June 18, 2010.[10]

13. Busch (Docket Nos. 544, 561 & 639)(Affidavit Docket No. 701-1)
    - suppression of statement made on September 8, 2009
    - suppression of statement made on October 9, 2009
    - suppression of identification on September 8, 2009
    - suppression of all recorded conversations made while incarcerated at the Erie County Holding Center[11]

14. Smith (Docket No. 705)(Affidavit Docket No. 705-1)
    - suppression of statements made on September 22, 2010
    - suppression of statement made during proffer on December 21, 2010[12]

15. D. Deynes (Docket No. 500)(Affidavit Docket No. 706)
    - suppression of statements made on February 24, 2012[13]

---

[10] The government argues that hearings are not necessary with respect to Ford's June 13, 2010 statements because one was made at ECMC hospital, and the other was made after he voluntarily accompanied the police to police headquarters. (Docket No. 710 at page 15). Ford contends, however, that he was in the company of ECMC security and other law enforcement personnel and believed that he "was detained and not free to leave" and that he would be arrested for obstructing on ongoing investigation if he did not accompany the officers to police headquarters (Docket No. 698 at ¶¶ 3-4). The government also contends that Ford gave his June 18, 2010 statement *after* being read his rights. (Docket No. 710 at page 16). Ford states that he never agreed to speak with the officers and, instead, asked for an attorney. (Docket No. 698 at ¶ 5). A hearing on these issues is warranted.

[11] The government consents to hearings with respect to Busch's alleged September 8, 2009 and October 9, 2009 statements. (Docket No. 710 at page 17). The government argues that a hearing is not necessary with respect to the recording of his phone conversations while incarcerated at the Erie County Holding Center because the defendant does not allege that he was not advised that they would be recorded. (Docket No. 710 at page 18). However, Busch does allege that he was not properly advised that the phone conversations at the Holding Center would be recorded. (Docket No. 701-1 at ¶ 5). A hearing on this issue is warranted as well. In his reply, the defendant also seeks to suppress an identification obtained on September 8, 2009 (Docket No. 639 at ¶14). The government concedes that this identification was "not merely confirmatory" but argues that the procedures used were fair. (Docket No. 710 at ¶ 27). A hearing on this issue is also warranted.

[12] It does not appear that the government has responded to Smith's motion to suppress.

[13] The government consents to a hearing on this issue. (Docket No. 710 at page 17)

- suppression of identification procedure on January 12, 2012[14]

The Court directs that hearings be held with respect to these 39 issues raised by the respective defendants. Hearings with respect to identification procedures will address only the suggestiveness of the procedure at this time. If the government and any defendant have consented to a hearing with respect to an issue that is not listed above, counsel shall advise the Court as soon as possible. The government is directed to make arrangements with the necessary witnesses so that these hearings can all take place consecutively commencing on February 5, 2013. **On or before January 18, 2013, the government shall provide the Court and the defendants with a proposed schedule as to the order of the hearings so that counsel can prepare accordingly**.

So Ordered.

                                                              */s/ Hugh B. Scott*
                                               United States Magistrate Judge
                                               Western District of New York

Buffalo, New York
January , 2013

---

[14] The government argues that the defendant's contention, that he was the only person in the photo array with a white t-shirt is incorrect. The government offers to present a "clearer copy" of the photo array for the Court to review. (Docket No. 710 at page 27). In light of the fact that questions may exist relating to the contents of the photo array, a hearing to develop the record with respect to the identification procedure is warranted.