**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA,**

        **Hon. Hugh B. Scott**

        **09CR331A**

**v.**

        **Decision &**
        **Order**

**Cody Busch, et al,**

        **Defendants.**

Before the Court are the following motions filed by the respective defendants: Cody

Busch ("Busch")(Docket Nos. 544, 561, 664, 701, 736, 825); Tony Peebles ("Peebles")(Docket

No. 522); Johnathan Serrano ("Serrano")(Docket No. 918); Justin Augus ("Augus")(Docket

Nos. 551 , 873); Mathew Deynes (Docket Nos. 546, 657, 684, 737) Nourooz Ali ("Ali")(Docket

Nos. 545, 596, 667); Desmond Ford ("Ford")(Docket Nos. 556, 674, 927); Omar Hernandez

("Hernandez")(Docket No. 550); Melvin Medina (Docket No. 507, 925); Michael Bobbitt

("Bobbitt")(Docket Nos. 660, 948); Daniel Colon ("Colon")(Docket Nos. 557, 659, 700, 860,

937); Mattthew Smith ("Smith")(Docket No. 519, 705, 762); Chaztity Fluellen

("Fluellen")(Docket No. 527); David Deynes (Docket Nos. 500, 663); Charles Watkins

("Watkins") (Docket Nos. 509, 732); Derrick Yancey ("Yancey")(Docket Nos. 651, 759); Sam

Thurmond ("Thurmond")(Docket No. 553); Jonathan Delgado ("Delgado")(Docket No.  512,

1

926); Ismael Lopez ("Lopez") (Docket Nos. 614, 669, 730); Domenico Anastasio

("Anastasio")(Docket No. 548); Darnell McIntosh ("McIntosh")(Docket No. 513); Miguel

Moscoso("Moscoso")(Docket Nos. 342, 432).[1]


## Background

On February 2, 2012, the Grand Jury for the Western District of New York issued a 74-

count Fourth Superceding Indictment naming 29 individual defendants. (Docket No. 408).[2] The

---

[1] The following motions are moot inasmuch as the respective defendants have entered guilty pleas in this matter: Hector Hernandez (Docket Nos. 549, 665); Douglas Harville (Docket No. 349); Benjamin Medina (Docket Nos. 533, 559, 806). Various motions seeking extensions of time have been previously determined and are also moot. (Docket Nos. 533, 633, 631, 668, 675, 680). In addition, motions by some of the defendants to waive their appearance at the evidentiary hearings (Docket Nos. 759, 754, 767) are also moot. Finally, defendant Miguel Moscoso has made a motion for an immediate trial which was resolved by District Judge Richard J. Arcara (Docket No. 834). In connection with that motion, Moscoso has withdrawn his requests for pretrial hearings (See Docket No. 731, ¶8).

[2] The initial indictment was issued on September 30, 2009 charging only Busch with various drug crimes (Docket No. 1). On November 25, 2009, the First Superceding Indictment was issued charging defendants Busch; Peebles, Kyle Eagan, Serrano, Augus, and Saul Santana with racketeering and various other drug trafficking and gun charges. (Docket No. 9). The Second Superceding Indictment was issued on September 15, 2010 naming 27 defendants: 27 defendants – Busch (1) Peebles (2) Eagan (3) Serrano (4) Augus (5) Santana (6) M. Deynes (7) Ali (8) Efrain Barreto (9) Ford (10) Jimmarlan Sessions (11) Omar Hernandez (12) Melvin Medina (13) Moscoso (14) Rodriguez (15) Jimmy Sessions (16) Michael Bobbitt (17) Brandon Bobbitt (18) Renel Velasquez (19) Colon (20) Douglas Harville (21) Jairo Hernandez (22) Matthew Smith (23) Hiram Lopez (24) Edwin Rivera (25) Jimmy Reuther (26) Chaztity Fluellen (27). (Docket No. 69). A Third Superceding Indictment was issued on April 28, 2011 adding David Deynes, Watkins, Yancey as defendants, bringing the total number of defendants up to 30. (Docket No. 226). The Fourth Superceding Indictment, issued February 2, 2012, added defendants Christopher Pabon, McIntosh, Ismeal Lopez, Anastasio, Michael Hernandez, Delgado and Thurmond. This indictment only lists 29 defendants because the following previously named defendants entered into plea agreements: Eagan (Docket No. 284), Barreto (Docket No. 339), Jimmarlan Sessions (Docket No. 330), Velasquez (Docket No. 323), Harville (Docket No. 392), Jairo Hernandez (Docket No. 391), Hiram Lopez (Docket No. 196), Edwin Rivera (Docket No. 173) and Jimmy Reuther (Docket No. 122). The following defendants have entered

remaining defendants include the following 22 individuals:  Busch, Peebles, Serrano, Augus, Matthew Deynes, Ali, Ford, Hernandez, Medina, Moscoso, Bobbitt, Colon, Smith, Fluellen, David Deynes, Watkins, Yancey, McIntosh, Lopez, Anastasio, Delgado and Thurmond.  The underlying charges are based upon the alleged activities of a purported criminal street gang referred to as "the 10th Street Gang."   The Fourth Superceding Indictment asserts a racketeering conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act  ("RICO")(18 U.S.C. § 1962(d)) against all the remaining defendants except Fluellen and McIntosh [Count I]. Count 2 asserts substantive RICO charges against 14 defendants (11 of the remaining defendants: Ali, Ford, Hernandez, Peebles, Augus, Medina, Moscoso, Busch, Yancey, Colon, and Smith) [Count 2].  These charges are supported by 42 alleged racketeering acts. (Docket No.  408 at pages 43-76).  Smith, Anastasio and Lopez are charged with the murder of Brandon MacDonald and Darinell Young [Counts 3 & 4]. Peebles, Ford and Hernandez are charged with attempted murder and related crimes involving victims "B.C." and "B.W." [Counts 5-7].  Hernandez is also charged with attempted murder and related weapons charges involving victim "J.B." [Counts 8-10].  Yancey and Ford[3] are charged with the murder of Omar Fraticello-Lugo [Count 11]. Yancey is charged with a weapons crime related to the Fraticello-Lugo murder. [Count 12].[4] Moscoso is charged with the murder of Christian Portes and a a related weapons crime [Counts

into plea agreements since the filing of the Fourth Superceding Indictment: Santana (Docket No. 473), Jimmy Sessions (Docket No.  564), Brandon Bobbitt (Docket No.  654), Pabon (Docket No.  573), Michael Hernandez (Docket No.  776) and Benjamin Medina (Docket No.  804).

[3]  Brandon Bobbitt, who has entered into a plea agreement, was also charged in these counts.

[4]  Counts 13-14 and 17-18, involving the attempted murder and murder of Anthony Colon, are asserted only against Santana, who has entered into a plea agreement.

15-16]. Moscoso is also charged with assault with a dangerous weapon and a related weapons charge involving victim "E.L." [Counts 19-20]. Peebles and Augus are charged with attempted murder and attempted assault of "rival gang members" along with related weapons crimes. [Counts 21-23]. Peebles, Ford and Busch are charged with attempted murder, attempted assault and various weapons crimes involving victim "M.S." [Counts 24-27]. Peebles is also charged with assault with a dangerous weapon and related weapons crimes involving victim "E.L." [Counts 28-29]. Peebles and Busch are charged with assault with a dangerous weapon and related weapons crimes involving victim "M.C." [Counts 30-32]. Peebles and Busch[5] are also charged with the attempted murder, attempted assault and related weapons crimes involving victim "E.H." [Counts 33-35]. Augus is charged with the attempted murders and attempted assaults of victims "C.M." and "W.J.", along with related weapons charges. [Counts 36-40]. Busch is charged with the attempted murder, attempted assault and related drug and weapons crimes involving victim "V.M." [Counts 41-46].[6] Moscoso is charged with attempted assault of victim "J.R.", witness tampering and related weapons crimes. [Counts 48-50]. Moscoso is also charged with another incident of witness tampering [Count 51]. Peebles and Colon are charged with the attempted murder, attempted assault and related weapons crimes involving victim "C.M." [Counts 52-54]. Ali is charged with the attempted murder and related weapons crimes involving victim "E.H" [Counts 55-56]. Peebles and Augus are charged with the attempted murder, attempted assault and related weapons crimes involving victim "L.M." [Counts 57-59].

---

[5]    Santana is also named in these counts.

[6]    Count 47, involving cocaine possession, is asserted only against Rodriguez, who has entered into a plea agreement.

Colon is charged with assault with a dangerous weapon and related weapons crimes involving victim "J.H." [Counts 60-61]. All of the remaining defendants, with the exception of Colon and Anastasio, are charged with a narcotics conspiracy involving the possession and distribution of cocaine, cocaine base and marijuana from 2000 to 2011. [Count 62].[7] All of the remaining defendants, with the exception of Colon, Anastasio, McIntosh and Fluellen, are charged with possession of firearms in furtherance of a drug crime. [Count 63]. Defendants Hernandez, Peebles, Ford, Fluellen and Smith are also charged, respectively, in various drug and weapons crimes. [Counts 64-74]. The Fourth Superceding Indictment also includes forfeiture allegations.


**Discovery**

The defendants' respective motions seek various types of pretrial discovery. During oral argument, the defendants acknowledged that the government has produced voluminous discovery in this case. (Docket No. 687 at 29, 39). The discovery in this case has been provided in searchable electronic format (Docket No. 687 at page 81). In addition, the government has provided each defendant with a summary chart of the discovery provided including the bates numbers and a description of the discovery. For example, "000155 -000170- ** REDACTED** BPD Crime Scene Unit & BPD report re: 08/12/2009 Assault/Shooting at 211 Bird." and "000171-000182: color photos as they relate to 08/12/2009 incident." (Docket No. 612-1 at page 1). This information provides the respective defendants with a roadmap to the discovery relating to the various incidents in which they are alleged to have participated.

---

[7] Defendants Santana, Rodriguez, Jimmy Sessions, Brandon Bobbitt, Michael Hernandez and Benjamin Medina, all of whom have entered into plea agreements, are also named in this count.

Specific discovery issues were addressed in the Court's previous post-argument Orders (Docket Nos. 691, 719, 739 and 797). In addition, the defendants argue generally that they should be provided with all witness statements, various unredacted materials, immediate disclosure of the identities of informants and expanded pretrial discovery in light of Missouri v. Frye, — U.S. — , 132 S. Ct. 1399 (2012) and Lafler v. Cooper, — U.S. — , 132 S. Ct. 1376 (2012). In Frye and Lafler, the Supreme Court held that defense counsel can he held to be ineffective in the context of advice provided with respect to plea discussions. In Frye, the prosecutor provided defense counsel with two plea offers – one allowing the defendant to pled guilty to a misdemeanor, however, counsel did not convey these offers to the defendant. The defendant was ultimately convicted of a felony. The Court held that the right to effective assistance of counsel extends to the consideration of plea offers and remanded the question of whether counsel's deficient performance prejudiced the defendant back to the state court. Frye, 132 S.Ct. at 1411. In Lafler, the defendant was charged with assault with intent to murder and other crimes arising from an incident in which the defendant shot the victim in her buttock, hip and abdomen. The prosecution offered a plea deal with a recommended sentence of 51 to 85 months. The defendant communicated with the Court, admitting guilt and expressing a willingness to accept the offer. Subsequently, the defendant rejected the offer after his attorney convinced him that the prosecution would be unable to establish his intent to murder the victim because the victim had been shot below the waist. On appeal, the parties agreed that the advice provided was deficient. The defendant was convicted at trial and sentenced to 185 to 360 months imprisonment. Lafler, 132 S. Ct. at 1383.

Neither Frye, nor Lafler, addressed the scope of pretrial discovery in a criminal case.

These decisions do not abrogate the Jencks Act relating to the disclosure of the statements of witnesses, or trump well-established case law allowing for the consideration of various factors, including the safety of witnesses, when determining the need for the disclosure of informants, redacted material or grand jury transcripts. Fairly read, <u>Frye</u> and <u>Lafler</u> stand for the proposition that the Sixth Amendment right to effective assistance applies to advice relating to plea negotiations, and that to do that an attorney must: (a) convey plea offers to the defendant; and (b) provide reasonable advice in light of the information that is available to the defense at that time under the applicable law.

To the extent that the defendants seek expanded discovery of witness statements, unredacted materials, a bill of particulars, disclosure of informants or grand jury transcripts based upon <u>Frye</u> and <u>Lafler</u>, the motions are denied.


**Rule 12 Notice**

Various defendants have included requests for notice under Rule 12 in their respective motions.  The government's  respective responses to such motions often included notice under Rule 12.  The defendants have not articulated that such notice was inadequate.  In any event, if not already provided, the government shall provide notice to the defendants pursuant to Rule 12.


**Exclusion of Non-Testifying Co-Conspirators**

Several of the defendants seek to compel disclosure of and preclusion of statements made by co-conspirators.  Rule 801 of the Federal Rules of Evidence has been cited in support of this request.  Rule 801(d)(2)(E) is a provision which defines whether certain statements are to be

considered "hearsay." This provision does not provide for *the disclosure* of such statements. In any event, it does not appear that the statements of co-conspirators are discoverable under Rule 801(d)(2)(E). The Jencks Act provides the exclusive procedure for discovering statements that government witnesses have given to law enforcement agencies. U.S. v. Covello, 410 F.2d 536, 543 (2d. Cir.) cert. denied 396 U.S. 879 (1969).

The defendants are not entitled to a pretrial hearing to determine the admissibility of co-conspirator statements under U.S. v. James, 590 F.2d. 575 (5th Cir. 1979). James hearings are not required in the Second Circuit. Instead, in this circuit the judge presiding over the trial of the case makes a ruling pursuant to U.S. v. Geaney, 417 F.2d 1116 (2d Cir. 1969) during the trial regarding the admissibility of the statements. See also U.S. v. Feola, 651 F.Supp 1068 (SDNY 1987), aff'd 875 F.2d 857 (2d Cir. 1989, cert. denied 493 U.S. 834 (1989); U.S. v. Margiotta, 688 F.2d 108 (2d Cir. 1982) cert. denied 461 U.S. 913 (1983); U.S. v. Mastropieri, 685 F.2d 776 (2d Cir. 1982) cert. denied 459 U.S. 945 (1982); U.S. v. Persico, 621 F.Supp 842 (SDNY 1985) aff'd 774 F.2d 30 (2d Cir. 1985).

Similarly, challenges to the admissibility of a statement under Bruton v. United States, 391 U.S. 123 (1968) are more appropriately determined by the presiding District Judge at trial.


**Identity of Informants**

The defendants seek the pretrial disclosure of the identity of any informants in this case.

Generally, the government is not required to furnish the identities of informants unless it is essential to the defense. Roviaro v. United States, 353 U.S. 52, 60-61 (1957); United States v. Saa, 859 F.2d 1067, 1073 (2d Cir.) cert. denied 489 U.S. 1089 (1988). Rule 16 does not require

8

the government to disclose the names of witnesses prior to trial.  United States v. Bejasa, 904 F.2d 137, 139 (2d. Cir.) cert. denied 498 U.S. 921 (1990).

The Court has the discretion to compel pretrial disclosure of the Government's witnesses, at least where the defendant makes "a specific showing that disclosure [is] both material to the preparation of his defense and reasonable in light of the circumstances surrounding his case." United States  v. Cannone, 528 F.2d 296, 300-301(2d. Cir. 1975).  ("[D]istrict courts have authority to compel pretrial disclosure of the identity of government witnesses."). Thus, the burden is on the defendant to make "some particularized showing of need," United States v. Kelly, 91 F.Supp.2d 580, 586 (S.D.N.Y.2000) (internal quotation marks and citation omitted), which "should be balanced against the possible dangers accompanying disclosure (i.e. subornation of perjury, witness intimidation, and injury to witnesses)," United States v. Cafaro, 480 F.Supp. 511, 520 (S.D.N.Y.1979) (quoting Cannone, 528 F.2d at 302).

In conducting this analysis, district courts in this Circuit have frequently looked to the factors set forth in United States v. Turkish,458 F.Supp. 874, 881 (S.D.N.Y.1978):

> (1) Did the offense alleged in the indictment involve a crime of violence?
>
> (2) Have the defendants been arrested or convicted for crimes involving violence?
>
> (3) Will the evidence in the case largely consist of testimony relating to documents (which by their nature are not easily altered)?
>
> (4) Is there a realistic possibility that supplying the witnesses' names prior to trial will increase the likelihood that the prosecution's witnesses will not appear at trial, or will be unwilling to testify at trial?
>
> (5) Does the indictment allege offenses occurring over an extended

period of time, making preparation of the defendants' defense complex and difficult?

(6) Do the defendants have limited funds with which to investigate and prepare their defense?

See United States v. Washington, 947 F.Supp. 87, 88 (S.D.N.Y.1996); United States v. Upton, 856 F.Supp. 727, 750-51 (E.D.N.Y.1994); United States v. Feldman, 731 F.Supp. 1189, 1199 (S.D.N.Y.1990).

The charges in the Fourth Superceding Indictment include four murders, 12 attempted murders, and numerous assaults. In addition, the Fourth Superceding Indictment includes two counts of witness tampering. The factors set forth in Turkish weigh heavily against the pretrial disclosure of witnesses or informants in this case. Here, the defendants are charged with murder and other violent crimes; much of the evidence against them appears to be in the form of testimony (as opposed to documents); and there is a realistic possibility that supplying the names of witnesses prior to trial will increase the likelihood that the prosecution's witnesses will not appear, or will be unwilling to testify, at trial. The defendants have not established a particularized need for pretrial disclosure of the identities of any informants or the government's witnesses. The government shall disclose the names of witnesses and informants as directed by the District Court in its trial Order.

**Bill of Particulars**

The defendants, respectively, seek a Bill of Particulars from the government typically requesting information such as a list of all unindicted co-conspirators, the specific dates, times

and locations of the conspiracy, a list of all uncharged overt acts (i.e. Docket No. 500 at ¶ 20), the manner in which the racketeering activity was committed, whether any individual present during the overt acts was acting for the government (i.e. Docket No. 503 at ¶ 6), as well as numerous request relating to the various individual overt acts and substantive Counts in the Fourth Superceding Indictment (i.e. Docket No. 561 at pages 5-38).[8]

The government argues that a Bill of Particulars is not required in this case. The government points to the fact that, in addition to the Fourth Superceding Indictment, the defendants have the details provided in the *282-page criminal complaint* setting forth information pertaining to the drug trafficking and Title III intercepts in this case. Further the government has produced *thousands of documents* as part of the voluntary discovery in this case, including all the wire tap applications and affidavits providing further details of the investigation. The defendants have also been provided with audio and text files of the various intercepted conversations involving the defendants, which include conversations which serve as evidence of the RICO enterprise and conspiracy. (Docket No. 598 at page 3-4). The government asserts that all this information, along with the lengthy Fourth Superseding Indictment, which includes pages of "General Allegations," which detail the background of the 10th Street Gang enterprise, provides that defendants with the purposes of the 10 Street Gang enterprise**,** the roles of the defendants, and the means and methods of the enterprise**.**

Most of the defendants seek the exact places, dates and times of the alleged conspiracy.

---

[8] At oral argument, defendant Augus requested that the Court go through each and every Brady request made by each of the respective defendants and make a preemptive ruling as to whether the request fell within the scope of <u>Brady</u>. (Docket No. 687 at page 24). The Court declines to rule preemptively on each <u>Brady</u> request. The Court will address only the specific disputed issues presented by the parties.

Several courts have held that the specific locations where acts in furtherance of the conspiracy occurred or formed are evidentiary matters not subject to particularization. See e.g., United States v. Feola, 651 F. Supp.1068, 1133 (S.D.N.Y. 1987).; United States v. Payden, 613 F. Supp. at 817; United States v. Bidloff, 82 F. Supp. 2d, 78, 83 (W.D.N.Y. 1999) (government need not particularize "elsewhere" referred to in conspiracy indictment).  It is settled that the government should not be required to furnish particulars relating to the formation of a conspiracy, including when and how it was formed and when a particular defendant joined, because such details need not be proven at trial. United States v. Bin Laden, 92 F. Supp. 2d 225, 242-243 (S.D.N.Y. 2000); United States v. Ianelli, 53 F.R.D. 482, 483 (S.D.N.Y. 1981); United States v. Crisona, 271 F. Supp. 150 (S.D.N.Y. 1967); United States v. Malinsky, 19 F.R.D. 426, 428 (S.D.N.Y. 1956)(denying requests for particulars as to the details of the creation of the conspiracy and the defendant's joinder therein). "Such requests — for when, where, how, and with whom each individual joined a conspiracy — have "almost uniformly been denied." United States v. Wilson, 565 F. Supp. 1416, 1438 (S.D.N.Y. 1983)(quoting United States v. Kahaner, 203 F. Supp. 78, 84 (S.D.N.Y. 1962)); see also  United States v. Muyet, 945 F. Supp. 586, 599 (S.D.N.Y. 1996) (stating "defendants are not entitled to a bill of particulars setting forth the 'whens', 'wheres', and 'with whoms' of [a] conspiracy").

To the extent that the defendants seek disclosure of the government's legal theories, this too, is not the proper subject of particularization. United States v. Parker, 165 F. Supp.2d 431, 467 (W.D.N.Y. 2001).

The defendants seek the names of all unindicted co-conspirators. The defendants have not established that such disclosure is necessary prior to the disclosure of such information along

with other Jencks material. See  United States v. Gotti, 784 F. Supp. 1017, 1018 (E.D.N.Y. 1992)

(appellate case law is clear that refusal of a district court to direct the filing of a bill of particulars

as to the names of unindicted coconspirators is not an abuse of discretion) (collecting cases); see

also United States v. Torres, 901 F.2d 205, 233-34 (2d Cir.), cert. denied, 498 U.S. 906 (1990)

(request for bill of particulars seeking, among other things, names of coconspirators "known and

unknown," denied).

Several defendants seek particularization relating to a specific overt act. The government

argues that the Courts have held that such particularization relating to overt acts is unwarranted,

particularly in light of the fact that the government need not prove the overt act. See Salinas v.

United States, 522 U.S. 52, 61-66 (1997); United States v. Kaminski, 1998 WL 275594, at *5

(N.D.N.Y. 1998) (holding "government is not required to provide detailed information about the

conspiracy, such as overt acts, how and when the conspiracy was formed, or when each

participant entered it"); Payden, 613 F. Supp. at 817-18 (S.D.N.Y. 1985). This is particularly so,

where as here, the United States is not required to prove any overt act in furtherance of the

charges. See e.g., United States v. Feola, 651 F. Supp. 1068, 1133 (S.D.N.Y. 1987) (citing cases).

The defendants rely upon United States v. Davidoff, 845 F.2d 1151, 1153 (2d Cir. 1988).

However, in that case, the government was permitted to offer evidence of extortions at trial

which were not alleged in the indictment or referenced during discovery. The Second Circuit

held that the District Court exceeded its discretion by denying a bill of particulars where the

discovery provided by the government did not cure the lack of notice in the indictment because

two of the three non-alleged extortions were not even referenced in the wiretap tapes provided by

the government during discovery. Moreover, in Davidoff, the Second Circuit cautioned:

> We do not mean to imply that even in a RICO case the prosecution must always disclose, in advance of trial, every act it will prove that may violate some criminal statute. But here it simply unrealistic to think that a defendant preparing to meet charges of extorting funds from one company had a fair opportunity to defend against allegations of extortions against unrelated companies, allegations not made prior to trial. Id. at 1154.

The Fourth Superceding Indictment does not lack such information in the instant matter. The Court is also not persuaded by the argument that a bill of particulars is required because *too* much discovery has been provided. As noted above, the discovery in this case has been provided in searchable electronic format (Docket No. 687 at page 81). In addition, the government has provided each defendant with a summary chart of the discover provided including the bates numbers and a description of the discovery. For example, "000155 -000170- ** REDACTED** BPD Crime Scene Unit & BPD report re: 08/12/2009 Assault/Shooting at 211 Bird." and "000171-000182: color photos as they relate to 08/12/2009 incident." (Docket No. 612-1 at page 1). This information provides the respective defendants with a roadmap to the discovery which relates to the various incidents in which they are alleged to have participated. This discovery also often provides the respective defendants with the particulars relating to the alleged incidents.

Upon review of the Fourth Superceding Indictment, and the representations of the parties regarding the scope and volume of discovery already provided by the government, the Court finds that a bill of particulars is appropriate only as to certain defendants named in Count 63 of the Fourth Superceding Indictment. As noted above, in Count 63 the indictment charges all of the remaining defendants, except Colon, Anastasio, Fluellen and McIntosh, with possession of a firearm in furtherance of a drug crime (that being the narcotics conspiracy alleged in Count 62). Count 63 states that the individuals possessed such firearms "[b]eginning in or before 2000, and

continuing to in or about 2011" (Docket No. 408 at page 119). Count 63 does not otherwise

describe the weapon or weapons that any particular defendant is alleged to have possessed; or the

time and location of such possession. This issue was addressed in United States v. Mason,

2007 WL 541653 (S.D.N.Y. 2007):

> In addition, [defendant] requests similar information for Count
> Two, including the specific dates, times, and locations where he
> possessed a firearm, how it was in furtherance of drug trafficking,
> and whether his possession was constructive or actual. ... The
> purpose of a bill of particulars is to provide sufficient information
> about an offense to permit the defendant to prepare for trial, to
> avoid unfair surprise, and to preclude a second prosecution for the
> same offense. ... However, "a bill of particulars is not a general
> tool of discovery, nor is it a device to give the defense a road map
> to the government's case." ... Thus, it is only required "where the
> charges of the indictment are so general that they do not advise the
> defendant of the specific acts for which he is accused."... Further,
> "[a]cquisition of evidentiary detail is not the function of the bill of
> particulars." ... An Indictment need not identify all alleged co-
> conspirators, nor specify the nature, time, and place of every overt
> act the defendant or others allegedly took in furtherance of a
> conspiracy, nor set forth all the evidence the Government seeks to
> introduce. ... ***The superceding Indictment reveals that this case is
> a generic narcotics conspiracy, wherein firearms were used to
> further narcotics trafficking. It details specific overt acts
> defendants allegedly undertook in furtherance of the conspiracy.***
> In addition, the Government has represented to this Court that the
> extensive discovery produced to date includes items seized from
> various locations, including marijuana, firearms, ammunition, and
> large amounts of cash. ... It is appropriate in ruling on a motion for
> a bill of particulars to consider whether the information sought has
> been provided in another way. ... Moreover, defendants seek "the
> very sorts of information with respect to which courts routinely
> deny requests for particularization." ... Defendants' motions are
> denied, as no further specificity is required here.

Mason, 2007 WL 541653 at *4-5.

In the instant case, the Fourth Superceding Indictment sets forth a RICO and narcotics

15

conspiracy providing dates and details of numerous violent crimes and other instances in which the defendants are alleged to have possessed and used a firearm. With respect to the use of firearms in support of the RICO and drug conspiracies, the overt acts allege: that David Deynes "fired several shots" at victim "A.P." on February 18, 2002 (Docket No. 408 at page 14); Peebles and Smith possessed a .38 caliber revolver on May 17, 2005 (Docket No. 408 at page 15); Smith possessed cocaine, marijuana, heroin and a 9 millimeter magazine on September 2, 2005 (Docket No. 408 at page 15); Thurmond, Delgado, Lopez and Anastasio obtained firearms on April 16, 2006 (Docket No. 408 at page 16); Pabon provided a handgun to Delgado on April 16, 2006 (Docket No. 408 at page 16); Anastasio provided a firearm to another 10th Street Gang member on April 16, 2006 (Docket No. 408 at page 16); Delgado and Thurmond existed Lopez's Ford Explorer with loaded firearms on April 16, 2006 (Docket No. 408 at page 16); Delgado and Thurmond fired shots at individuals on April 17, 2006 (Docket No. 408 at page 17); Delgado was armed with a handgun on May 22, 2006 (Docket No. 408 at page 20); Peebles shot at rival M&T Gang member on June 15, 2007 (Docket No. 408 at page 22); Hernandez shot victim "J.B." on March 23, 2008 (Docket No. 408 at page 24); Hernandez possessed a loaded .38 caliber revolver in Amherst, New York on March 23, 2008 (Docket No. 408 at page 24); Busch and Augus shot rival gang member "K.R." on July 14, 2008 (Docket No. 408 at page 25); Micahel Bobbitt possessed a Sturm Ruger 9mm semi-automatic pistol and a Kel-Tec 9mm semi-automatice pistol on August 20, 2008 (Docket No. 408 at age 25); Augus fired several shots at a residence located at 102 Pennsylvania Street on August 11, 2009 (Docket No. 408 at page 30); Peebles shot rival gang member "M.S." on August 12, 2009 (Docket No. 408 at page 31); Busch shot at rival gang member "R.L." on August 13, 2009 (Docket No. 408 at page 31); Peebles shot

rival gang member "E.L." on August 13, 2009 (Docket No. 408 at page 31); Peebles and Busch shot victims "A.C" and "M.C." on August 14, 2009 (Docket No. 408 at page 32); Peebles, Busch and Santana shot at rival gang members on August 17, 2009 (Docket No. 408 at page 32); Peebles, Ford and Santana shot at rival gang members on August 17, 2009 (Docket No. 408 at page 32); Busch fired several shots at occupants inside a SUV on September 8, 2009 (Docket No. 408 at page 33); Busch possessed cocaine, and a loaded Strurm Ruger .45 caliber pistol on September 8, 2009 (Docket No. 408 at page 33); Moscoso fired a round through the window of "J.R."'s residence on October 15, 2009 (Docket No. 408 at page 34); Peebles, Pabon and Colon shot rival gang member "C.M." on October 17, 2009 (Docket No. 408 at page 34); Ali fired several shots into a residence on October 21, 2009 (Docket No. 408 at page 35); Peebles and Augus shot rival gang member "L.M." on November 8, 2009 (Docket No. 408 at page 35); Colon shot victim "J.H." on January 24, 2010 (Docket No. 408 at page 38); Ford possessed a firearm, scale and crack cocaine on June 11, 2010. (Docket No. 408 at page 39). In addition, Peebles, Ford and Hernandez are charged with attempted murder and weapons crimes involving victims "B.C." and "B.W." on June 15, 2007 [Counts 5-7]. Yancey is charged with a weapons crime related to the Fraticello-Lugo murder on September 15, 2008. [Count 12]. Moscoso is charged with the murder of Christian Portes and a related weapons crime on June 13, 2009 [Counts 15-16]. Moscoso is also charged with assault with a dangerous weapon and a related weapons charge involving victim "E.L." on July 2, 2009 [Counts 19-20]. Peebles is also charged with assault with a dangerous weapon and related weapons crimes involving victim "E.L." on August 13, 2009 [Counts 28-29]. Peebles and Busch are also charged with the attempted murder, attempted assault and related weapons crimes involving victim "E.H." on August 17,

2009 [Counts 33-35]. Augus is charged with the attempted murders and attempted assaults of victims "C.M." and "W.J.", along with related weapons charges on September 5, 2009. [Counts 36-40]. Busch is charged with the attempted murder, attempted assault and related drug and weapons crimes involving victim "V.M." on September 8, 2009 [Counts 41-46].

As in Mason, the government asserts that the alleged violence outlined above was undertaken in furtherance of the drug trafficking activities of a drug conspiracy. For the most part, the Fourth Superceding Indictment provides significant particularization as to the dates and circumstances relating to these instances of the use of firearms by various purported members of the 10th Street Gang in furtherance of the alleged drug trafficking conspiracy. The Fourth Superceding Indictment does not include specific allegations asserting the possession of a firearm with respect to defendants Matthew Deynes, Watkins or Medina. With respect to those defendants, to the extent the government intends to rely upon incidents which are not referred to in the Fourth Superceding Indictment, the government is directed to provide particulars, including the date, the circumstances regarding the possession, and a description of the firearm alleged to have been possessed. Except as provided above, the respective motions for bills of particulars are denied.


**Brady and Jencks Act Material**

The defendants seek the disclosure of all potentially exculpatory materials, including information to be used for the impeachment of the government's witnesses, as required under Brady v. Maryland, 373 U.S. 83 (1963) and its progeny. Brady material, as those cases have come to define it, includes all evidence which may be favorable to the defendant and material to

the issue of guilt or punishment. Such evidence includes "[a]ny and all records and/or information which might be helpful or useful to the defense in impeaching ... [and] [a]ny and all records and information revealing prior misconduct ... attributed to the [government's] witness." U.S. v. Kiszewski, 877 F.2d 210 (2d Cir. 1989). The defendants also seeks disclosure of the statements of witnesses under the Jencks Act (15 U.S.C. §3500).

The government has acknowledged its obligations under Brady and Giglio v. United States, 405 U.S. 150 (1972), as well as the Jencks Act. The government represents that it has already produced much of this material and will provide all remaining Brady and Jencks material as directed in the District Court's trial order.

Neither the Supreme Court, nor the Second Circuit[9], have ruled directly on whether there is a meaningful distinction between "exculpatory Brady" and "impeachment Brady" materials for purposes relating to the time within which such information must be disclosed. Several other courts have discussed the issue at hand, which often arises in the context of a potential, if not inherent conflict between the government's obligations to disclose under Brady, and the governments right to delay disclosure of certain information pursuant to the Jencks Act. Those cases suggest that the court has some discretion with respect to directing the timing of such disclosure. U.S. v. Campagnuolo, 592 F.2d 852 (5th Cir. 1979)(the Court interpreted Brady to require disclosure "at the appropriate" time, which often is prior to trial); U.S. v. Perez, 870 F.2d 1222 (7th Cir. 1989)(the government's delay in disclosing Brady material violates due process only if the delay prevented the defendant from receiving a fair trial); U.S. v. Ziperstein,

---

[9]        In a footnote in its opinion in Lucas v. Regan, 503 F.2d 1, 3 n.1 (1974), the Second Circuit stated that "[n]either Brady nor any other case we know of requires that disclosures under Brady be made before trial."

601 F.2d 281 (7th Cir. 1979)(a defendant receives a fair trial, notwithstanding delayed disclosure of <u>Brady</u> material, as long as disclosure is made before it is too late for the defendant to make use of any benefits of the evidence). But see <u>U.S. V. Wilson</u>, 565 F.Supp 1416 (S.D.N.Y. 1983) (impeachment material need not be produced prior to trial); <u>U.S. Biaggi</u>, 675 F.Supp 790 (S.D.N.Y. 1987)(information bearing on a witness' credibility may be turned over at the same time as [Jencks Act] materials); <u>U.S. V. Feldman</u>, 731 F.Supp 1189 (S.D.N.Y. 1990)(it is sufficient for the government to disclose <u>Brady</u> impeachment materials along with [Jencks Act] materials).

The Jencks Act relates only to "statements" made by government witnesses. Such statements may include inconsistencies which make them useful for impeachment purposes, and thus, subject them to disclosure under <u>Brady</u> principles. To this extent, it has been suggested that the constitutional requirements underlying <u>Brady</u> could act to modify the Jencks Act. <u>U.S. v. Campagnuolo</u>, 592 F.2d 852, 860 (5th Cir. 1979). But see <u>U.S. v. Presser</u>, 844 F.2d 1275 (6th Cir. 1988)(the government may not be compelled to pretrial disclosure of <u>Brady</u> or Jencks material). The record in this case does not reflect whether any of the materials withheld by the government may be considered both <u>Brady</u> and Jencks material. Certainly "impeachment <u>Brady</u>" material may include several items which are not considered "statements" under the Jencks Act.

This Court believes that fundamental fairness and the constitutional due process requirements which underlie <u>Brady</u> mandate that the court have some discretion with respect to the timing of the disclosure of such information, even if it may be considered combined <u>Brady</u>/Jencks material. Indeed, even with respect to purely Jencks Act materials, the Second Circuit has stated that "pre-trial disclosure will redound to the benefit of all parties, counsel and

the court, ... sound trial management would seem to dictate that Jencks Act material should be submitted prior to trial ... so that those abhorrent lengthy pauses at trial to examine documents can be avoided." U.S. v. Percevault, 490 F.2d 126 (2d Cir. 1974);  U.S. V. Green, 144 F.R.D. 631 (W.D.N.Y. 1992).

In the instant case, and while balancing all of the above, the Court concludes that disclosure of such inculpatory and impeachment material, if any exists,  in accordance with the common practice in this district (prior to trial so long as it is disclosed in sufficient time for the defendants to have a fair opportunity to utilize the information at trial) is sufficient.

**Rule 404, 608 and 609 Material**

The defendants also seek information under Rules 404, 608 and 609 of the Federal Rules of Evidence.  Federal Rule of Evidence 404(b) governs requests for disclosure of all evidence of prior bad acts that the government intends to use in its case-in-chief.  Rule 404 requires that the defendants be given "reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to use at trial."   To the extent that the government intends to use any such evidence of a prior bad act in its case in chief, the government shall produce all Rule 404(b) evidence as directed by the District Court in the trial order.

With respect to the defendants' requests under Rules 608 and 609, the only notice requirement imposed by either Rule applies where a party intends to introduce evidence of a conviction that is more than ten years old. Under such circumstances, Rule 609(b) mandates that "the proponent [give] to the adverse party sufficient advance written notice of intent to use such

evidence to provide the adverse party with a fair opportunity to contest the use of such evidence."

To the extent the government intends to use a conviction more than 10 years old, it must comply

with this requirement. The government has no obligation to provide the defendant with notice of

any material that will be used to impeach him pursuant to Rule 608 should he elect to testify.

See United States v. Livoti, 8 F.Supp.2d 246 (S.D.N.Y. 1998); United States v. Song, 1995 WL

736872, at *7 (S.D.N.Y. Dec.13, 1995).


**Preservation of Rough Notes and Evidence**

The defendants seek the preservation of notes taken by law enforcement personnel

involved in this matter and other evidence. The government is directed to preserve this material.


**Grand Jury Transcripts**

The defendants seek disclosure of the grand jury transcripts in this matter. There is a

presumption that grand jury proceedings are lawful and regular, (United States v. Torres, 901

F.2d 205, 232 (2d Cir.) (quoting Hamling v. United States, 418 U.S. 87, 139 n. 23, 94 S.Ct.

2887, 2918 n. 23, 41 L.Ed.2d 590 (1974), *cert*. denied, 498 U.S. 906, 111 S.Ct. 273, 112

L.Ed.2d 229 (1990)), and disclosure of grand jury proceedings is available only by order of the

Court. (See Fed.R.Crim.P. 6(e)). A party seeking disclosure of grand jury proceedings bears

the burden of establishing a "particularized need" or "compelling necessity" for such disclosure

which outweighs the policy of grand jury secrecy. Douglas Oil Co. v. Petrol Stops Northwest,

441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979); Pittsburgh Plate Glass Co. v. United

States, 360 U.S. 395, 400, 79 S.Ct. 1237, 1241, 3 L.Ed.2d 1323 (1959); In re Rosahn, 671 F.2d

690, 695 (2d Cir.1982). Unspecified allegations of impropriety or mere speculation are not sufficient to satisfy this heavy burden. United States v. Calandra, 414 U.S. 338, 345, 94 S.Ct. 613, 618-19, 38 L.Ed.2d 561 (1974). Therefore, "review of grand jury minutes is rarely permitted without specific factual allegations of governmental misconduct." Torres, 901 F.2d at 233.

The defendants have not presented any particularized need or advanced any proof controverting the presumption of regularity in the grand jury proceedings in this case. This request is denied.

**Audibility Hearing**

Several defendants seek an audibility hearing regarding tape recordings the government intends to use at trial. The defendants do not allege that any particular tape is inaudible. It appears that this issue is moot.

**Requests under Rules 806 and 807**

The defendants also request information pursuant to Rules 806 and 807 of the Federal Rules of Evidence, relating to possible hearsay evidence the government intends to use at trial. If the government should determine that it will attempt to introduce such hearsay statements, the government is directed to notify the defendant of such in accordance with the trial order issued by the District Court.

**Expert Disclosure, Summaries, Voir Dire Experts**

The defendants have requested disclosure relating to any experts the government intends to use at trial. To the extent not already provided, the government shall make disclosure of the government's experts as directed in the District Court's trial order. The defendants have also requested production of government summaries, leave to cross-examine any expert government witnesses outside the presence of the jury, and to have an active role in the voir dire process. These issues are more appropriately determined by the District Court Judge presiding over the trial in this matter.

**Severance and Trial Scheduling Motions**

Many defendants have filed motions seeking severance from the other defendants in this case, or severance of certain counts in the Fourth Superceding Indictment. (Docket Nos. 500, 509, 512, 513, 519, 545, 546, 548, 553, 556, 557, 614). Various defendants have also filed motions to exclude them from being among the first group to proceed to trial in this matter (Docket No. 918, 925, 926, 927, 937). Similarly, the government has filed a motion to sever the defendants into various groups for trial. (Docket No. 932). Such motions are more appropriately determined by the District Judge presiding over the trials in this matter. Thus, the Court defers these motions to the District Judge.

So Ordered.

*/s/ Hugh B. Scott*
United States Magistrate Judge
Western District of New York

Buffalo, New York
July 15, 2013